OPINION OF THE COURT
Chief Judge Cooke.
An out-of-court confession that is corroborated by evidence that the crime occurred is sufficient to sustain a determination that a youth is a juvenile delinquent, notwithstanding the absence of independent evidence directly linking the youth to the criminal act.
On September 30, 1977, Rosa Valdez was killed in her South Brooklyn home by robbers who ransacked the house and shot Mrs. Valdez four times. The next day, a car containing items taken from the Valdez house was found burned in Bensonhurst. Police eventually arrested two adult suspects, Luis Vera and Alan Fuentes, and interrogated two youths, who were released because of their minimal participation in the incident.
Vera and Fuentes each confessed. Vera attributed the actual shooting to an unnamed “black dude”. Fuentes stated that Vera was the shooter. While incarcerated at Rikers Island, Vera committed suicide. Subsequently, authorities discovered in Vera’s cell a letter to Fuentes that *434 indicated that Vera and possibly Fuentes were fabricating their stories' to avoid a murder conviction.
The day after Vera’s suicide, appellant voluntarily came to the police station, where he was later joined by his mother and a family friend. After waiving his Miranda rights, appellant twice confessed his part in the burglary-slaying and the later car-burning. None of the other four suspects had mentioned appellant’s participation, and, before his appearance, the police had no intimation that he was involved in any fashion.
A fact-finding hearing was held to determine appellant’s delinquency. The evidence consisted primarily of appellant’s two confessions and the results of the police investigation. Appellant moved to dismiss for failure by the People to make out a prima facie case, arguing that no evidence other than his confession had been presented to place appellant at the scene of the crime. The motion was denied. Appellant’s defense relied on showing that his confession was not trustworthy and that, for reasons unknown, he fabricated the account of his participation. Appellant did not testify at the hearing.
Appellant was found to have committed acts that, if he were an adult, would constitute second degree murder and second degree burglary, and was adjudicated a juvenile delinquent. The Trial Judge ordered him placed with the New York State Division for Youth. The Appellate Division unanimously affirmed, without opinion. Leave to appeal was granted by this court.
The primary issue before this court is the extent of corroboration required by subdivision (b) of section 744 of the Family Court Act. That subdivision provides: “Any determination at the conclusion of a fact-finding hearing that a respondent did an act or acts must be based on proof beyond a reasonable doubt. For this purpose, an uncorroborated confession made out of court by a respondent is not sufficient.” The People argue that, as with adults, independent proof that a criminal act occurred is the only corroboration that is necessary (see CPL 60.50). Appellant asserts, however, that there must be independent evidence of his participation as well as of the crime’s occurrence. There *435 has been a split among the Appellate Divisions. The First and Second Departments have adopted the lesser standard (see Matter of Geraldine D., 85 AD2d 574 [1st Dept]; Matter of Carmelo E., 79 AD2d 897 [2d Dept]); the Fourth Department has indorsed the stricter standard requiring independent proof of participation (see Matter of Earl R., 34 AD2d 1094).
In considering the question, it must be kept in mind that juvenile delinquency proceedings have a dual nature. While involving criminal conduct, the process itself is a civil proceeding. This is the result of early decisions to accord greater flexibility in responding to the wayward child than is permitted by the criminal justice system and its sanctions for the adult offender (see McKinney’s Session Laws of NY, 1962, pp 3433-3434; Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Part 1, Family Ct Act, § 711, pp 548-549). The goal has been said to be not to punish a malefactor, but rather to supervise and guide a troubled youth (see McKinney’s Session Laws, op. cit.; Besharov, op. cit.; see, also, People v Lewis, 260 NY 171, 176-177).
One of the initial consequences of this approach was the minimization, if not the total abnegation, of constitutional and statutory rights accorded adults (see People v Lewis, supra). Thus, children could be adjudicated juvenile delinquents and removed from the community without the protection of legal counsel, using involuntary or questionable confessions, on the basis of otherwise incompetent evidence, and with guilt being established by only a preponderance of evidence. This State early began affording greater protection to children lest the criminal nature of the proceeding be overlooked because of its civil characterization. A specific act of delinquency was required to be charged and proven (see People v Pikunas, 260 NY 72), standard rules of evidence in civil trials were to be followed (see People v Lewis, 260 NY, at p 178), and, when the act charged would be criminal if committed by an adult, normal criminal procedure was to be invoked (see People v Fitzgerald, 244 NY 307, 312-316).
Notwithstanding this solicitude for children’s rights, there still remained significant deviations from the rights *436 accorded adults, although both could be subjected to loss of liberty. Not until 1967 was it held that a child undergoing adjudication as a juvenile delinquent was generally entitled to constitutional rights of due process (see Matter of Gault, 387 US 1). Specifically, the Supreme Court ruled that, at least when the child is facing possible incarceration, he or she has the right to receive prior written notice of the charges, the right to be represented by counsel, the right to confront and cross-examine witnesses, and the right to invoke the privilege against self incrimination (id., at pp 33-34, 41, 55-57). Only in 1970 did the Supreme Court first hold that juveniles charged with violating the criminal law are constitutionally entitled to the reasonable-doubt standard, rather than the less demanding preponderance-of-the-evidence rule (see Matter of Winship, 397 US 358, 368).
It is against this backdrop that we consider the provisions of the Family Court Act, adopted in 1962 (L 1962, ch 686). Acting at a time when juveniles’ constitutional rights remained severely circumscribed, the Legislature provided certain statutory privileges instead. For example, it directed that children be advised of a right to remain silent and to be represented by counsel (see Family Ct Act, § 741, subd [a], L 1962, ch 686), a particularly innovative step at the time (see Dembitz, Juvenile Cases in the New Family Court, 48 Cornell LQ 499, 513). And the Legislature added the provision — now under scrutiny in the present case — that an extrajudicial confession must be corroborated for it to satisfy the evidentiary burden of proof (Family Ct Act, § 744, subd [b], L 1962, ch 686).
Both appellant and the People point to the section’s legislative history, particularly the public hearings and reports, to support their respective positions. Appellant urges that the more restrictive interpretation was intended inasmuch as the Legislature was acting to strengthen juvenile rights. The People counter that the act was meant only to grant the same, not greater, protections to juveniles as were held by adults.
The latter argument is more persuasive. Appellant confuses the theoretical solicitude of the Family Court with the statutory and constitutional rights held by children *437 before 1962. Albeit charged with paternally guiding the wayward youth back to the path of righteousness and lawfulness, the courts often did this with little regard to the youth’s (later gained) rights. In other words, the child’s welfare was protected with a too-heavy hand. The Legislature, therefore, acted to provide certain procedural safeguards before the court could exercise its far-reaching substantive powers over children (see McKinney’s Session Laws of NY, 1962, pp 3436-3437). Indeed, the limit of the Legislature’s concern is evidenced by subdivision (b) of section 744 itself: as originally enacted, it still required proof of guilt by only a preponderance of the evidence (see Family Ct Act, § 744, subd [b], L 1962, ch 686), a standard not changed (see L 1976, ch 191) until after the decision in Matter of Winship (397 US 358, supra). In short, the Legislature’s purpose was to increase the procedural rights held by juveniles charged with committing acts that would be criminal if done by an adult. Requiring only general corroboration is consonant with this purpose.
This conclusion is buttressed by a consideration of other statutes. CPL 60.50 states: “A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed.” This is derived from section 395 of the Code of Criminal Procedure, which included substantially identical language. In contrast, accomplice testimony cannot be used to convict a defendant if “unsupported by corroborative evidence tending to connect the defendant with the commission of such offense” (CPL 60.22, subd 1 [emphasis added], derived from Code of Criminal Procedure, § 399 [must have “other evidence as tends to connect the defendant with the commission of the crime”]). At the time the Legislature enacted subdivision (b) of section 744, it had two models from which it could draw in drafting a new statute imposing a corroboration requirement. The Family Court Act did not parrot the language used in section 395 of the Code of Criminal Procedure, but it also did not impose the stricter corroboration requirement of accomplice testimony.
The greater scrutiny accorded accomplice testimony is to guard against the inherent suspiciousness of such evidence *438 (see People v Cona, 49 NY2d 26). No similar reason is present when a juvenile confesses. The confessing juvenile’s penal interest is not to incriminate himself, as opposed to the accomplice who may deliberately incriminate others in order to obtain favorable treatment for himself or herself. Given the right to counsel held by juveniles today, which ameliorates the dangers of abusive interrogation (cf. Matter of Gregory W., 19 NY2d 55), the more pressing concern is that traditionally related to confessions, the fear of convicting a person when no crime has actually occurred (see People v Murray, 40 NY2d 327, 331-332).
Had the Legislature desired to grant confessing juveniles the same protection given defendants being prosecuted with accomplice evidence, it could have included language similar to that appearing in CPL 60.22 (subd 1). Not having seen fit to do so, the Legislature should be assumed to have intended the lesser standard. Thus, the People here were under a burden of establishing the corpus delicti of murder and burglary, but were not required to show by independent proof that appellant personally was involved. This burden was met and appellant’s confession was properly used to support the final determination of delinquency.
Appellant’s other arguments are without merit.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed.